**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

JOHN MULLINS,

Plaintiff,

v.

THE CITY of COLORADO SPRINGS,
BRIAN KELLY, in his official and individual capacities,
CHRISTOPHER MACE, in his official and individual capacities,
MARK NEUENFELDT, in his official and individual capacities,
JOHN DOES (1-5), in their official and individual capacities,

Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff John Mullins by and through his attorneys David A. Lane and Reid Allison of KILLMER, LANE & NEWMAN, LLP submits his Complaint and Jury Demand as follows:

## INTRODUCTION

1. On February 27, 2019, CSPD officers unleashed a police canine on John Mullins while he was naked and showering in his own home.

2. The officers' use of a canine was wildly unreasonable under the totality of the circumstances: the officers had no reason to believe that Mr. Mullins was a threat to anyone, and they were arresting him on suspicion of purely non-violent crimes.

3. As Mr. Mullins exited his shower, naked, the canine bit him on the leg, causing him a serious injury, with massive blood loss, that required multiple surgeries to treat. His leg will never be the same.

4. The officers used this extreme and injurious force on Mr. Mullins despite the fact that he was unarmed, acting lawfully, was remaining calm, and did not threaten any officer.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. This action is authorized and instituted pursuant to 42 U.S.C. § 1983.

6. 42 U.S.C. § 1988 conveys jurisdiction supporting Plaintiff's claims for attorney's fees and costs.

7. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391. All the events alleged occurred within the State of Colorado, and all the parties were residents of the State at the time of the events giving rise to this Complaint.

## PARTIES

8. Plaintiff John Mullins was and is a citizen of the United States and State of Colorado during the relevant times described herein.

9. At all times relevant to the allegations of this Complaint, individual Defendants Kelly, Mace, Neuenfeldt, and Defendant Does (1-5) were police officers for the City of Colorado Springs. All are citizens of the United States and residents of the State of Colorado.

10. Defendant City of Colorado Springs ("Colorado Springs") is a municipality and is a proper party under § 1983.

11. All Defendants acted under color of state law at all times relevant to this Complaint.

## FACTUAL ALLEGATIONS

12. On February 27, 2019, John Mullins was taking a shower in his home. Unbeknownst to him, a large team of Colorado Springs Police Department ("CSPD") officers

had arrived to arrest him for nonviolent crimes he was suspected of committing and to search the home.

13. The officers discovered Mr. Mullins' mother and sister in the home and ordered them outside.

14. Mr. Mullins had at no point resisted any officer or attempted to flee, and the officers had no reason to believe that he was a threat to them or anyone else. He was suspected of committing only nonviolent crimes.

15. Though the officers had no reason to believe that Mr. Mullins was a threat to anyone, they decided to threaten and use a police canine rather than going to apprehend Mr. Mullins themselves (including joined by the canine on a leash) or ordering his family members to bring him out.

16. Mr. Mullins, in the shower in an upstairs bathroom in the home, did not hear the officers give any warnings at the front door before they released the canine.

17. While Mr. Mullins was still naked in the shower, the officers unleashed the canine into the home to find and bite him.[1] The canine ran up the stairs and bit Mr. Mullins on the upper thigh, as he was exiting the shower.

18. When Defendants Kelly, Mace, Neuenfeldt, and other CSPD Defendant Does went upstairs, they found the canine latched onto Mr. Mullins leg. Mr. Mullins was naked, clearly unarmed, and was not resisting or threatening the canine or any other officer.

[1] Upon information and belief, Defendant Kelly was the canine's direct handler. However, Officers Mace and Neuenfeldt, as well as Defendant Does, agreed to the plan of unleashing the canine and had every opportunity to intervene to prevent this obvious use of excessive force. When Plaintiff obtains additional records about CSPD's actions that day, he will move to amend this Complaint.

19. There were then at least three heavily armed CSPD officers (with guns drawn) present in the bathroom with the naked, unarmed Mr. Mullins. These Defendant officers easily could have restrained Mr. Mullins without the canine.

20. Even so, as Mr. Mullins screamed in pain on the floor of the bathroom, Defendant Kelly did not immediately order the canine to stop biting him. This delay of approximately 20-25 seconds needlessly and unreasonably prolonged Mr. Mullins' excruciating pain and may have exacerbated his already severe injury.

21. The canine's bite caused a severe injury to Mr. Mullins' leg, threatening a major artery and causing him massive blood loss. He was immediately taken to the hospital and required multiple emergency surgeries.



*Images of the injury to Mr. Mullins' leg taken at the hospital.*

22. Mr. Mullins was discharged from the hospital without being arrested. A week later, when he returned to the hospital for necessary ongoing wound care, CSPD officers arrested him.

## MONELL LIABILITY OF COLORADO SPRINGS

23. All of the acts described herein were done by the Defendants intentionally, knowingly, willfully, wantonly, maliciously and/or recklessly in disregard for Mr. Mullins' clearly-established federally protected rights. These actions were caused by Defendant Colorado Springs's preexisting and ongoing deliberately indifferent custom, policy, practice, training, and supervision of its officers acting under color of state law.

24. Defendants' treatment of Mr. Mullins was pursuant to Defendant Colorado Springs' customs, practices, and training regarding the use of a police canine in situations where officers have no reason to believe that a suspect poses any threat.

25. Colorado Springs' written policies correctly align with the constitutional standard by requiring an officer to have some reason to believe that a suspect poses a threat—based on that person's criminal history, the crimes they are suspected of committing, and/or their observable aggressive actions in the moments force is used.

26. However, the circumstances of this case make clear that CSPD's written policy exists only to provide a false sheen of constitutionality to its operations.

27. Upon information and belief, Defendant Kelly has been a canine handler for CSPD for over five years. If any officer would know the actual customs, practices, and policies of CSPD, it would be him.

28. Even so, Defendant Kelly unleashed a canine on a nonviolent suspect who had given officers no reason to believe that he posed a threat of violence or resistance.

29. His blatantly unconstitutional actions make clear that, at best, CSPD has utterly failed to train its officers on the use of a canine, while protecting the Fourth Amendment rights of suspects.

30. Moreover, neither Defendant Kelly, nor any other Defendant officer was disciplined or retrained in any way after unleashing a canine on a nonviolent, nonthreatening, nonresistive suspect. This despite the fact their actions violated CSPD's written policies.

31. Indeed, after CSPD investigated a civilian complaint that Mr. Mullins's mother made about the incident, CSPD insisted that its officers had acted properly and according to CSPD policy. On its face, this is compelling evidence that CSPD's informal, unwritten customs, practices, and policies caused Defendants to unleash the canine on Mr. Mullins in objectively unreasonable circumstances.

32. By failing to discipline the Individual Defendants for their unconstitutional and illegal conduct, Colorado Springs made clear that the conduct conformed to pre-existing informal policies, customs, and practices. Colorado Springs also made clear that it trains and supervises its officers that its written policies, which hew to constitutional protections, do not govern their action. And instead CSPD officers are empowered to unleash canines on nonviolent suspects, who are neither resisting nor fleeing.

33. Colorado Springs' approval of the Individual Defendants' blatantly unconstitutional actions sends an unequivocal message to its employees—it ***trains*** them—that such constitutional violations are acceptable, consistent with policy, and are approved practice, causing similar constitutional violations to be likely or even inevitable in the future.

34. Defendant Colorado Springs failed to properly train and supervise its employees to avoid excessive force in the use of a canine to bite a suspect.

35. Defendant Colorado Springs knew, or should have known, that its employees would fail to use reasonable force by means of the canine unit, violating Mr. Mullins's constitutional rights.

36. Defendants Colorado Springs was deliberately indifferent to Mr. Mullins's constitutional rights, because they knew that individuals in Mr. Mullins position would be at a substantial risk of suffering dangerous consequences from Colorado Springs' failure to properly train and supervise its employees.

37. Defendant Colorado Springs could have and should have pursued reasonable methods for the training and supervising of such employees but failed to do so. Instead, the facts of this case make clear that CSPD has trained its officers in direct contravention of its clear, constitutional written policies.

38. Defendant Colorado Springs' policies, customs, or practices in failing to properly train and supervise their employees were the moving force and proximate cause of the violation to Mr. Mullins's constitutional rights.

39. The custom, policy, and practice of Defendant Colorado Springs of encouraging, condoning, tolerating, and ratifying the use of excessive force by law enforcement officers and their canine units, as described herein were the moving force behind, and proximate cause of, the violation to Mr. Mullins's constitutional rights.

40. The acts or omissions of Defendant Colorado Springs caused Mr. Mullins damages in that he suffered a significant physical injury, physical and mental pain, among other injuries, damages, and losses.

41. The actions of Defendant Colorado Springs as described herein deprived Mr. Mullins of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and caused him other damages.

## STATEMENT OF CLAIM FOR RELIEF

**FIRST CLAIM FOR RELIEF**
*42 U.S.C. § 1983 – Fourth Amendment*
*Excessive Force*
(Against All Defendants)

42. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

43. At all times relevant to this Complaint, Defendants were acting under the color of law.

44. When Defendant Kelly unleashed the canine on Mr. Mullins the officers had no reason to believe that he was a threat to anyone or was a threat to flee. The officers also knew that the crime they were arresting him for was a nonviolent one.

45. When Defendants, including Defendant Kelly, saw the canine biting Mr. Mullins, they knew that he was naked, unarmed, and not resisting or threatening the canine or any officer. Even so, the officers did not immediately order the canine to stop biting Mr. Mullins.

46. Mr. Mullins suffered a severe injury and excruciating pain due to Defendants' objectively unreasonable use of force.

47. At the time when Defendants harmed John Mullins, Mr. Mullins's Fourth Amendment right to be secure in his person from unreasonable seizure through excessive force was clearly established.

48. Defendants actions, as described above, were motivated by intent to harm John Mullins.

49. Defendants engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Mr. Mullins's constitutional rights.

50. As a result of Defendants use of excessive force, John Mullins experienced, injury, pain and suffering with no justification or excuse in law. The acts and omissions of Defendants were the moving force behind and proximate cause of Mr. Mullins's pain.

51. None of the individual Defendants took reasonable steps to protect Mr. Mullins from the obviously unreasonable seizure through excessive force of the other individual Defendants, though each was in a position and had the ability to do so. Each is therefore liable for the damages resulting from the objectively unlawful arrest and seizure used.

52. The acts or omissions of the individual Defendants were the moving force behind, and the proximate cause of the serious physical and emotional injuries sustained by Mr. Mullins.

53. Individual Defendants were engaged in these acts pursuant to the formal or informal custom, policy and practice of the City of Colorado Springs, which encourages, condones, tolerates, and ratifies the obviously and objectively unreasonable use of a police canine in situations such as this, where officers have no reason to believe that a suspect poses a threat.

54. This formal or informal custom, policy and practice of the City of Colorado Springs is so permanent and well settled as to constitute custom by high ranking officers, the Chief of Police, and City of Colorado Springs with final policymaking authority— and has been ratified by such policymakers.

55. The acts or omissions of Defendant City of Colorado Springs caused Mr. Mullins damages, including mental, physical, emotional and economic damages.

56. The acts and inactions of Defendants caused Mr. Mullins damages in that he suffered physical injury and mental pain during Defendants' unlawful use of excessive force against him, among other injuries, damages, and losses.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff John Mullins respectfully requests that this Court enter judgment in his favor and against Defendants, and grant:

(a) Appropriate declaratory and other injunctive and/or equitable relief;

(c) Compensatory and consequential damages, including damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(d) All economic losses on all claims allowed by law;

(e) Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(f) Attorney's fees and the costs associated with this action, including those associated with having to defend against the false criminal charge as well as expert witness fees, on all claims allowed by law;

(g) Pre and post-judgment interest at the lawful rate; and

(h) Any further relief that this court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

Dated this 26th day of February 2021.

KILLMER, LANE & NEWMAN, LLP

*s/ David A. Lane*
David A. Lane
Reid Allison
Killmer, Lane & Newman, LLP
1543 Champa Street, Suite 400
Denver, Colorado 80202

(303) 571-1000
dlane@kln-law.com
rallison@kln-law.com
A*ttorneys for Plaintiff*