**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 21-cv-0589-WJM-KMT

JOHN MULLINS,

     Plaintiff,

v.

THE CITY OF COLORADO SPRINGS,
BRIAN KELLY, in his official and individual capacities,
CHRISTOPHER MACE, in his official and individual capacities,
MARK NEUENFELDT, in his official and individual capacities, and
JOHN DOES 1–5,

     Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS**

---

     This civil rights action arises out of the February 27, 2019 arrest of Plaintiff John

Mullins by Colorado Springs Police Department ("CSPD") officers, which resulted in

Mullins' severe injury by a police canine. (ECF No. 1 at 1–4.) Mullins sues the City of

Colorado Springs (the "City"), as well as CSPD officers Brian Kelly, Christopher Mace,

Mark Neuenfeldt, and officers John Does 1-5[1] in their individual and official capacities

(collectively, the "Defendant Officers") for Fourth Amendment violations under 42 U.S.C.

§ 1983. (*Id.*)

     This matter is before the Court on Defendant Officers' and the City's (collectively,

"Defendants") Motion to Dismiss ("Motion"). (ECF No. 25.) For the following reasons,

---

[1] The Court reads the caption to reflect that John Does 1–5 are CSPD officers and are being
sued in their individual and official capacities.

the Motion is granted in part and denied in part.

## I. BACKGROUND

The following factual summary is drawn from Mullins' Complaint and Jury Demand ("Complaint").  (ECF No. 1.)  The Court assumes the allegations contained in the Complaint are true for the purpose of deciding the Motion.  *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

On February 27, 2019, "a large team" of CSPD officers, including Defendant Officers, arrived at Mullins' home to arrest him and search his home.  (¶ 12.)[2]  The crimes he was suspected of committing were nonviolent.  (*Id.*)  When Defendant Officers arrived, they discovered Mullins' mother and sister in his home and ordered them to go outside.  (¶ 13.)  Then Defendant Officers "decided to threaten and use a police canine" to apprehend Mullins.  (¶ 15.)  They unleashed the canine and sent it into his home "to find and bite [him]."  (¶17.)  Mullins was in the shower in an upstairs bathroom of his home and did not hear the officers give any warnings before they released the canine.  (¶ 16.)  The canine ran up the stairs and bit Mullins on the leg as he was exiting the shower.  (¶ 17.)  Defendant Officers went upstairs and found the canine continuing to bite Mullins' leg.  (¶ 18.)  Defendant Officers saw Mullins "naked, clearly unarmed, [and] not resisting or threatening the canine or any other officer."  (¶ 45.)  Yet, for 20–25 seconds, Defendant Officers did not stop the canine from continuing to bite Mullins.  (¶ 20.)

After the incident, Mullins was taken to the hospital, where he required multiple surgeries.  (¶ 21.)  The canine's bite caused severe injury to his leg and caused him

---

[2]  Citations to paragraph numbers, without more, *e.g.* (¶ __), are to paragraphs in the Complaint.  (ECF No. 1.)

"massive blood loss."  (*Id.*)

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177.  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted).  "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'"  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## III. LEGAL STANDARDS

Mullins asserts a claim for excessive force in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983, which allows an injured person to seek damages for the violation of his federal rights against a person acting under color of state law.  *See* 42 U.S.C. § 1983; *see also West v. Atkins*, 487 U.S. 42, 48 (1988).  To assert a claim under § 1983, Mullins must show (1) that he had a right secured by the Constitution and laws of the United States that was violated (2) by a person who acted under color of state law.  *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009).  "A defendant cannot

be liable under § 1983 unless personally involved in the deprivation." *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (citation omitted).

## A.  Excessive Force in Violation of the Fourth Amendment

"The Fourth Amendment forbids unreasonable seizures, including the use of excessive force in making an arrest." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007). Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment. *See, e.g., Graham v. Connor*, 490 U.S. 386, 395 (1989); *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1313 (10th Cir. 2009). This standard "requires inquiry into the factual circumstances of every case; relevant factors include the crime's severity, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest." *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (citing *Graham*, 490 U.S. at 396). A "court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005) (quoting *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314 (10th Cir. 2002) (further citation omitted)).

## B.  Qualified Immunity

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law." *Gutierrez v. Cobos*, 841 F.3d 895, 899 (10th Cir. 2016) (internal quotation marks omitted). "Once the qualified immunity defense is asserted," the plaintiff must show: "first, the defendant[s'] actions violated a constitutional or statutory right, and, second, that the right was clearly established at the

time of the conduct at issue." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)

(internal quotation marks omitted).  "If the plaintiff fails to satisfy either part of the

inquiry, the court must grant qualified immunity." *Carabajal v. City of Cheyenne*, 847

F.3d 1203, 1208 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 211 (2017).

"In this circuit, to show that a right is clearly established, the plaintiff must point to

a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of

authority from other courts must have found the law to be as the plaintiff maintains."

*Gutierrez*, 841 F.3d at 900 (internal quotation marks omitted).  "A plaintiff need not show

the very act in question previously was held unlawful in order to establish an absence of

qualified immunity."  *Id.* (internal quotation marks omitted).  But "[a]n officer cannot be

said to have violated a clearly established right unless the right's contours were

sufficiently definite that any reasonable official in his shoes would have understood that

he was violating it."  *City and Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611

(2015) (internal quotation marks omitted).

"The dispositive question is 'whether the violative nature of *particular* conduct is

clearly established.'"  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (emphasis in original)

(quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).  Therefore, a plaintiff may not

defeat qualified immunity "simply by alleging violation of extremely abstract rights."

*White v. Pauly*, 137 S. Ct. 548, 552 (2017).  Nonetheless, the clearly established inquiry

"involves more than a scavenger hunt for prior cases with precisely the same facts.

*Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

## IV. ANALYSIS

As an initial matter, Defendants do not dispute that a seizure occurred, and the

Court finds that the canine's biting of Mullins constitutes a seizure.  *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989) ("[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control"); *Couture v. Bd. of Educ. of Albuquerque Public Sch.*, 535 F.3d 1243, 1250 (10th Cir. 2008) (asking first in the analysis of Fourth Amendment claim whether there was a seizure).

**A.    Official Capacity Claims**

Defendants argue that Mullins' official capacity claims against Defendant Officers should be dismissed as duplicative of his claim against the City.  (ECF No. 25 at 4.) They argue that any official capacity claim against a municipal employee is treated as a suit against the municipality itself.  *See Johnson v. Bd. of Cnty. Comm'rs for Cnty. of Fremont*, 85 F.3d 489, 493 (10th Cir. 1996).  Mullins does not address this argument in his response.  (*See generally* ECF No. 27.)

As the City is a named defendant in this action, and Mullins offers no argument or authority supporting additional official capacity claims against Defendant Officers, the Court concludes that the claims are redundant.  *French v. City of Cortez*, 361 F. Supp. 3d 1011, 1042 (D. Colo. 2019) (dismissing official capacity claims against individual officers as duplicative of claim against city).  Accordingly, to the extent Mullins asserts official capacity claims against Defendant Officers, such claims are dismissed without prejudice.

**B.    Personal Capacity Claims**

       1.    <u>Releasing the Canine</u>

             a.    *Claim Against Defendants Mace and Neuenfeldt*

In their Motion, Defendants argue that Defendant Mace and Neuenfeldt are not personally liable for any Fourth Amendment violation because: (1) they did not

personally participate in any alleged violation; and (2) they did not have a realistic opportunity to intervene.  (ECF No. 25 at 8–9.)   As to the release of the canine, Mullins does not respond to Defendants' arguments.  (*See generally* ECF No. 27.)

In his Complaint, Mullins alleges that Defendants Mace and Neuenfeldt "agreed to the plan of unleashing the canine and had every opportunity to intervene to prevent this obvious use of excessive force."  (¶ 17 n.1.)  But Mullins does not allege any specific facts to support the conclusion that Defendants Mace and Neuenfeldt were involved in a plan to release the canine[3] or that they had a realistic opportunity to intervene in the release of the canine.  Therefore, the Court finds that the Complaint lacks sufficient facts to plausibly support a claim of excessive force against Defendants Mace and Neuenfeldt in relation to the release of the canine.  *Hall*, 584 F.3d at 863 (to survive a motion to dismiss, "the factual allegations must be enough to raise a right to relief above the speculative level") (citation and internal quotation marks omitted).

　　　　　b.　*Claim Against Defendant Kelly*

Defendants argue (1) Mullins' allegations against Defendant Kelly fail to state a claim for violations of the Fourth Amendment and (2) Defendants are entitled to qualified immunity.  These arguments are addressed in turn below.

　　　　　(i)　Qualified Immunity: Constitutional Violation Prong

First, the Court considers whether Mullins has sufficiently pleaded a cognizable Fourth Amendment violation arising from Defendants' release of the canine at the front door of his home.  Defendants argue that Mullins has failed to allege sufficient facts,

---

[3] Mullins does not assert specific allegations with respect to Defendant Kelly's role in releasing the dog either, but Mullins does allege "Defendant Kelly was the canine's direct handler" (¶ 17 n.1), and Defendants do not contest Defendant Kelly's personal participation.

taken as true, to state a plausible claim that their actions were objectively unreasonable. (ECF No. 25 at 6–7.)  In analyzing Defendants' arguments, the Court pays careful attention to the three *Graham* factors discussed above: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight.  *Graham*, 490 U.S. at 396.

Defendants argue that the first factor weighs in Defendant favor because Mullins was being arrested for felony crimes.  (ECF No. 25 at 6.)  However, the Complaint does not allege that the crimes Mullins was suspected of were felonies.  (ECF No. 1.)  To substantiate their position, Defendants request that the Court take judicial notice of a warrant which is attached to their Motion as Exhibit A.  (ECF No. 25 at 2 n.3.)  However, in deciding a motion to dismiss "a federal court generally should not look beyond the confines of the complaint itself."  *MacArthur v. San Juan Cnty.*, 309 F.3d 1216, 1221 (10th Cir. 2002).  Therefore, the Court does not consider the exhibit at this juncture.

Mullins alleges that the crimes he was suspected of were nonviolent; he does not specify whether they were misdemeanors or felonies.  (¶ 12.)  If the crimes were felonies, the first *Graham* factor likely weighs against Mullins.  *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1170 (10th Cir. 2021) ("the first *Graham* factor weighs against the plaintiff when the crime at issue is a felony, irrespective of whether that felony is violent or nonviolent.").  But if the crimes were misdemeanors, then this factor weighs in favor of Mullins.  *Long v. Fulmer*, 545 F. App'x 757, 760 (10th Cir. 2013) (affirming district court's conclusion that first *Graham* factor weighed slightly in favor of the plaintiff when the plaintiff was being arrested for a nonviolent misdemeanor).  Therefore, on the

facts alleged in the Complaint, the first *Graham* factor cannot be said to weigh in either party's favor.

"The second *Graham* factor, whether the suspect posed an immediate threat to the safety of the officers, "is undoubtedly the 'most important' and fact intensive factor in determining the objective reasonableness of an officer's use of force, *Pauly v. White*, 874 F.3d 1197, 1215–16 (10th Cir. 2017) (quoting *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010)).  Nothing in the Complaint suggests that Mullins was armed or that the officers were in danger when they released the canine.  Additionally, Defendants were part of a "large team," which further reduced the potential danger they faced.  *See Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 731 (7th Cir. 2013) ("this is not the case of a single officer attempting to control and detain multiple suspects.").  Therefore, the second *Graham* factor weighs heavily in Mullins' favor.

As to the third *Graham* factor, whether the suspect attempted to resist or evade arrest, Mullins alleges that "[he] had at no point resisted any officer or attempted to flee." (¶ 14.)  Further, Mullins was contained within his home, naked on his bathroom floor, and not out in the open.  *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 665–66 (10th Cir. 2010) (a reasonable jury could find that "[plaintiff] was not fleeing [when] she was quickly walking towards her own home, where [an officer] could easily arrest her if he so desired.").  The third *Graham* factor also weighs heavily in favor of Mullins.

Defendants address the second and third *Graham* factors together.  Defendants argue that "[p]laintiff's violent criminal history, in conjunction with his failure to respond to Defendant Officer's warnings, could have led a reasonable officer to believe that he would fight, resist, or evade officers."  (ECF No. 25 at 7.)  Defendants' assertion that

Mullins failed to respond to "Defendant Officer's warnings" is not supported by the allegations in the Complaint, which does not even contain the word "warning."[4]  The other basis for Defendants' argument is Mullins' "criminal history," but the allegations in the Complaint do not show that Mullins had a criminal history or, even if he did, that any of the Defendant Officers were aware of that history. [5]  Therefore, on the facts alleged in the Complaint, Defendants' argument as to the second and third *Graham* factors is unsubstantiated.

Because the second and third *Graham* factors weigh heavily in favor of Mullins, and the crimes that he was being arrested for were nonviolent, the Court finds that Mullins has sufficiently pleaded a Fourth Amendment excessive force claim.  *Vette*, 989 F.3d at 1170 (holding that though the first factor may favor an officer, the other two factors may "weigh so strongly against significant use of force that [the officer] cannot prevail"); *Katterman v. Salt Lake City*, 2017 WL 1207518, at *8 (D. Utah Mar. 31, 2017) (finding on motion for summary judgment that use of police dog to seize a suspected felon violated Fourth Amendment where plaintiff did not resist arrest or flee and had no warning that the officer was looking for him, and no evidence suggested he was armed).

        (ii)      Qualified Immunity: Clearly Established Prong

It is clearly established in this and every other Circuit that a police officer may not

---

[4] Mullins does allege that Defendant Officers "decided to threaten and use a police canine."  (¶ 15.)  But it is unclear from the Complaint what the content of the Officers' threat was and to whom the threat was made.  Considering the allegations in the Complaint "in the light most favorable to the plaintiff," the Court finds that Mullins has not alleged that a warning was given before the canine was released.  *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177.

[5] Defendants support their claim with Exhibit B of their Motion, a copy of a plea agreement signed by Mullins on February 8, 2021.  (ECF No. 25 at 2 n.3.)  The Court rejects this argument for two reasons: first, the argument is based on information outside of the Complaint; and second, the plea deal is irrelevant because, at this stage, there is no way to establish that Defendant Officers knew about Mullins' plea deal.

use excessive force in arresting an individual.  *See, e.g., Casey*, 509 F.3d at 1282–84.

However, while this right is recognized in a general sense, "the right to be free from the

degree of force employed in a particular situation may not have been clear to a

reasonable officer at the scene."  *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008).  The

Supreme Court has provided the following instruction:

> For a constitutional right to be clearly established, its
> contours must be sufficiently clear that a reasonable official
> would understand that what he is doing violates that right.
> This is not to say that an official action is protected by
> qualified immunity unless the very action in question has
> previously been held unlawful, but it is to say that in light of
> pre-existing law the unlawfulness must be apparent.

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citations and internal quotations omitted).  A

case directly on point is not required for a right to be clearly established, and "officials

can still be on notice that their conduct violates established law even in novel factual

circumstances."  *Id.* at 741.

As previously stated, Mullins alleges that Defendant Officers released the canine

while he was showering in an upstairs bathroom.  (¶ 16.)  He was naked and unarmed.

(¶ 4.)  He alleges that he was being arrested for a nonviolent crime and that he did not

hear any warning before the canine was released.  (¶¶ 12, 16.)  He also alleges that at

no time did he resist arrest, threaten the officers, or try to flee.  (¶ 12.)  Taking these

facts as true, the Court considers the state of the law surrounding an officer's decision

to release a canine to apprehend an unarmed suspect in his own home, without any

indication that the suspect poses a threat or is attempting to flee.

Defendants argue that Defendant Officers' use of an off-leash canine to

apprehend Mullins in these circumstances was not a clear violation of the Fourth

Amendment.  (ECF No. 25 at 4–6.)  Defendants' argument largely rests on their

analysis of an unpublished opinion, *Crall v. Wilson*, 2018 WL 10335708 (D. Colo. May 4, 2018), *report and recommendation adopted*, 2018 WL 10335707 (D. Colo. July 11, 2018), *aff'd*, 769 F. App'x 573 (10th Cir. 2019).

In *Crall*, three officers and a police canine entered the plaintiff's trailer with a warrant to arrest a third party who was suspected of misdemeanor drug-related crimes. *Id.* at *1. The officers moved towards the bedroom of the trailer and stopped outside the bedroom doorway, which was covered by a piece of fabric. *Id.* Under the fabric, the officers could see a pair of work boots at the foot of a bed, and a space heater pointed at the bed. The officers could also hear a television inside the room. *Id.* From the hallway, the officers announced their presence and then "loudly stated" that "they would send the dog into the bedroom to bite its occupants if they did not exit." *Id.* When the plaintiff failed to answer, the officer sent in the canine. *Id.* The canine latched onto the plaintiff, and the officer pulled at the canine's leash to pull the plaintiff out of the bedroom. *Id.* Then the officer arrested the plaintiff. The court in *Crall* found that it was not clearly established that the officer had used excessive force in these circumstances. *Id.* at *9.

The *Crall* court reasoned that this was not a clear case of excessive force because this was not a situation where "a reasonable officer could have thought plaintiff posed no danger to the officers and was not resisting arrest or attempting to evade arrest." *Id.* at *8. The court reasoned that the officers could have thought the plaintiff posed a danger or was attempting to resist because:

> (1) Defendant "loudly" warned the occupants in the bedroom, which included Plaintiff, that he would send a police dog into the room to bite anyone who did not exit the bedroom; and
> (2) Defendant released the dog into the bedroom to bite the

occupants only after they failed to comply with Defendant's order.

*Id.*  Significantly, however, the fact on which the entire holding in *Crall* was based is missing in this case.  As discussed above, Mullins does not allege that the officers gave a warning before releasing the canine, let alone a loud warning.  Further, the officer in *Crall* was only separated from the plaintiff by a piece of fabric, which gave him good reason to believe the occupants of the bedroom heard his warning; but Defendant Officers were at the front door to a multi-story home.

Additionally, in *Crall*, the officers were in more danger than Defendant Officers in this case.  There were only three of them, whereas Defendant Officers were part of a "large team."  (¶ 12.)  The officers were in close proximity to the plaintiff, in tight quarters, whereas Defendant Officers had not made contact with Mullins and were outside his home when they released the canine.  Finally, Defendant Officers were serving a warrant for nonviolent crimes, while the officers in *Crall* were serving a drug-related warrant which could give them a reason to believe that their arrestee would be armed.  *United States v. Hishaw*, 235 F.3d 565, 570–571 (10th Cir. 2000) (citing cases) (evidence supporting an officer's reasonable suspicion that an individual is involved in a drug offense may also indicate that the person may be armed and dangerous; persons involved with drugs often carry weapons).  Therefore, the Court finds the facts in *Crall* to be insufficiently similar to the facts alleged by Mullins.

The Court acknowledges there is no published Tenth Circuit case exactly on point discussing when the off-leash use of a police canine by law enforcement can constitute unconstitutional excessive force.  In the Court's judgment, however, the lack of a similar case on the *form or manner of force* used is not dispositive here.  *McCowan*

*v. Morales*, 945 F.3d 1276, 1287 (10th Cir. 2019) ("It seemed clear and well established to our court in *McCoy* that when an officer inflicts gratuitous force against a fully compliant and subdued arrestee he is not protected by qualified immunity even though there has not yet been a case involving the precise manner that the officer chose to inflict that unconstitutional force.") (emphasis in original); *see also Cooper v. Brown*, 844 F.3d 517, 525 (5th Cir. 2016) ("Lawfulness of force . . . does not depend on the precise instrument used to apply it.  Qualified immunity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel.").  In other words, for purposes of the Constitution, it matters not the manner in which the force is applied, or the form that it takes: excessive force is excessive force.

Mullins alleges he was suspected of only nonviolent crimes, officers had no reason to believe that he was a threat to them or anyone else, he was exiting a shower in his own home, nude and unarmed, and he was not actively resisting or fleeing from the officers.  Under these circumstances, it is clearly established in the Tenth Circuit that there are limits to the amount of force an officer can use, whatever form or manner that force may take.  For example, tackling or using a Taser under these circumstances would constitute excessive force.  *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (force was excessive when officer threw down suspect who carried no weapon, made no overt threats, and did not get within reach of the officers); *Cavanaugh*, 625 F.3d at 666–67 (10th Cir. 2010) (holding that it was clearly established that officer could not use a Taser against unarmed misdemeanant who did not pose an immediate threat and was not resisting or evading arrest without first giving a warning); *see also Emery v. Salt Lake City Corp.*, 2018 WL 1620928, at *14 (D. Utah Mar. 30, 2018) (finding a "clearly

established . . . right under the Fourth Amendment to be free from . . . tackling, punching, and Tasing" where suspect "was not threatening anyone or fleeing, had no weapons, had not disobeyed any instructions from the Officers, and was in no danger of harming anyone").

At least as alleged here, the amount of force used when an officer Tasers or tackles a suspect is less severe than when an officer releases a dog to attack a confined, unarmed, and non-threatening suspect.  The off-leash use of a canine to bite an individual for several seconds unquestionably seizes the individual in a violent manner.  The Court finds that the "nature and quality of the intrusion on the individual's Fourth Amendment interests" in this case, as alleged in the Complaint, was at least as severe as in cases where an officer tackles or uses a Taser on a similarly-situated individual.  *Graham*, 490 U.S. 386, 396.

Indeed, the force used by Defendant Officers against Mullins was more severe than the force used in numerous Tenth Circuit cases that found excessive force under similar circumstances.  The use of clearly excessive force is not protected by qualified immunity merely because Defendant Officers' means of applying it are novel.  *Hope*, 536 U.S. at 741; *see Cooper*, 844 F.3d at 525; s*ee also Bailey v. Twomey*, 791 F. App'x 724 (10th Cir. 2019) ("[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.") (internal quotations omitted).  Therefore, the Court finds that Mullins' right not to be attacked by a canine in these circumstances was clearly established by February 27, 2019, and as a result, the Motion as it pertains to Mullins' personal capacity claim against Kelly is denied.

2.    <u>Failing to Remove Canine</u>

    a.    *Claim against Defendants Mace and Neuenfeldt*

As discussed above, Defendants argue that Defendant Mace and Neuenfeldt are not liable for any Fourth Amendment violation because: (1) they did not personally participate in any alleged violation; and (2) they did not have a realistic opportunity to intervene.  (ECF No. 25 at 8–9.)

Plaintiff alleges that after the canine was released, it ran up the stairs and bit his leg while he was exiting the shower.  (¶ 17.)  Defendant Officers went upstairs and found the canine continuing to bite Mullins' leg.  (¶ 18.)  Defendant Officers saw Mullins was "naked, clearly unarmed, and was not resisting or threatening the canine or any other officer."  (¶ 45.)  For 20–25 seconds, Defendant Officers did not stop the canine from continuing to bite him.  (¶ 20.)

In this Circuit, an officer can be liable for a failure to intervene when he (1) observed a constitutional violation and (2) had a realistic opportunity to intervene. *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015); *see also Mick*, 76 F.3d at 1136 (holding that it is well established that a police officer has a duty to intervene to prevent use of excessive force by another police officer).

Mullins argues that Defendant Officers had the opportunity to intervene while they watched the canine continue to bite Mullins for 20–25 seconds.  (ECF No. 27 at 10.)  Mullins alleges that they refused to remove the canine "though prolonging the attack was clearly excessive force."  (*Id.*)

Defendants argue that Mullins does not allege that Defendants Mace and Neuenfeldt "had any ability to control the dog," and without an ability to control the canine, they cannot be said to have had a realistic opportunity to intervene.  (ECF No.

28 at 7.)  The Tenth Circuit has dismissed a failure to intervene claim in similar circumstances when the plaintiff had not alleged that any officer, aside from the canine's handler, had the ability to control the canine.  *Savannah v. Collins*, 547 F. App'x 874, 876 (10th Cir. 2013).

Mullins does not allege that Defendants Mace and Neuenfeldt had the ability to control the canine.  Therefore, in light of *Savannah*, the Court finds that Defendants Mace and Neuenfeldt have not violated clearly established law by failing to intervene.

> b.   *Claim against Defendant Kelly*

Defendants argue (1) Mullins' allegations against Defendant Kelly fail to state a claim for violations of the Fourth Amendment and (2) Defendants are entitled to qualified immunity.  These arguments are addressed in turn below.

> (i)    Qualified Immunity: Constitutional Violation Prong

First, the Court considers whether Mullins has sufficiently pleaded a cognizable Fourth Amendment violation arising from Defendants' failure to order the canine to stop biting Mullins for 20–25 seconds.  Defendants argue that 20–25 seconds was not an unreasonable amount of time to allow the canine to continue to bite Mullins.  (ECF No. 25 at 8; ECF No. 28 at 5.)  However, Defendants do not argue that Mullins posed a threat to anyone, resisted arrest, or attempted to flee.

For the same reasons that the Court discussed in Section B.1, above, the second and third *Graham* factors weigh heavily in favor of Mullins in these circumstances. If anything, however, the factors weigh even more heavily in favor of Mullins because the officers could see that Mullins was naked and unarmed on the floor, that he was not resisting or attempting to flee, and that he was being subjected to a severe amount of force.

Under these circumstances, the Court finds that Mullins has stated a claim as to Defendant Kelly for the violation of his Fourth Amendment rights arising from the length of time the canine was permitted to bite Mullins.  *See Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 923–24 (11th Cir. 2000) (finding it objectively unreasonable for officers to allow a canine to bite and hold a suspect for two minutes—which it described as "an eternity"—where he was compliant with orders and not resisting arrest); *Griggs v. Wash. Metropolitan Area Transit Auth.*, 232 F.3d 917, 922 (D.C. Cir. 2000) (finding no qualified immunity for an officer who allowed police canine to continue attacking plaintiff after surrender).

(ii)    Qualified Immunity: Clearly Established Prong

The Tenth Circuit held early this year that "as of 2017, our precedent was clear 'that continued use of force after an individual has been subdued is a violation of the Fourth Amendment.'" *Vette*, 989 F.3d at 1172 (quoting *Perea v. Baca*, 817 F.3d 1198, 1205).

As discussed above, Mullins alleges that Defendant Kelly was in the bathroom watching the canine continue to bite Mullins for 20–25 seconds and that Defendant Kelly failed to remove the canine from him even though he was not a threat to anyone and was not resisting arrest.  Taking these facts as true, the Court considers the state of the law surrounding an officer's decision to allow a police canine to continue to bite a suspect who poses no threat, offers no resistance, and is not in a position to flee.

Although the matter has not been discussed by this Circuit, a substantial number of courts in other jurisdictions have found and held that "excessive duration of [canine] bite . . . could constitute excessive force."  *Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1093 (9th Cir. 1998); *see Cooper*, 844 F.3d at 525 (affirming district court's

finding of excessive force where police canine "continued biting [the nonresistant suspect] for one to two minutes[,]" officer did not remove the canine until the suspect had rolled onto his stomach and was in handcuffs, and officer had "no reason to believe that [the suspect] posed a threat"); *LaLonde v. County of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000) ("in a situation in which an arrestee surrenders and is rendered helpless, any reasonable officer would know that a continued use of [pepper sprays or police dogs] or a refusal without cause to alleviate its harmful effects constitutes excessive force"); *Campbell v. City of Springboro, Ohio*, 788 F.Supp.2d 637, 671 (S.D. Ohio 2011) *aff'd*, 700 F.3d 779, 787 (6th Cir. 2012) (denying summary judgment on excessive force claim because "[t]here is evidence suggesting that [officer] allowed [the canine] to continue to bite [suspect] for an extended period of time, up to forty-five seconds"); s*ee also Escobar v. Montee*, 2016 WL 397087, at *8 (N.D. Tex. Feb. 2, 2016) (observing that courts routinely consider the duration of a canine bite in assessing the reasonableness of the use of force, and collecting cases across circuits and districts); *Dunn v. Nance*, 2009 WL 1956429, at *7 (D. Idaho July 6, 2009) ("Ordering or allowing a police canine to bite a suspect for more than one minute under the circumstances described above [i.e., the plaintiff was lying flat on the ground, not resisting, and with his arms outstretched in full view of the officers] could amount to excessive force."); *Abbott*, 705 F.3d at 732, 733 (observing that prior to 2011 it was well-established that "police officers cannot continue to use force once a suspect is subdued").

Given the cited case law, the Court finds that in 2019, a reasonable officer in this jurisdiction should have known that it was constitutionally impermissible to allow a canine to continue to bite Mullins for 20–25 seconds while he was lying on his bathroom

floor, naked and unarmed, offering no resistance and with no ability to flee from police.

As a result, the Motion as it pertains to Mullins' personal capacity claim against Kelly for

failing to remove the canine is denied.

**C.**     ***Monell* Liability**

Section 1983 imposes liability on

> [e]very person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected,
> any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws . . . .

42 U.S.C. § 1983.  The Supreme Court held in *Monell v. Department of Social Services*

that "person," as used in this statute, includes "municipalities and other local

government units," more specifically, "local government units which are not considered

part of the State for Eleventh Amendment purposes."  436 U.S. 658, 691 & n.54

(1978).[6]

However, a local government unit can be liable for damages under 42 U.S.C.

§ 1983 only when its "policy or custom, whether made by its lawmakers or by those

whose edicts or acts may fairly be said to represent official policy, inflicts the

[constitutional] injury."  *Id.* at 694.  The Supreme Court has thus "required a plaintiff

seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy'

or 'custom' that caused the plaintiff's injury," thereby "ensur[ing] that a municipality is

held liable only for those deprivations resulting from the decisions of its duly constituted

---

[6] The Eleventh Amendment reads, "The Judicial power of the United States shall not be
construed to extend to any suit in law or equity, commenced or prosecuted against one of
the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."
The Supreme Court construes this language to mean, among other things, that states may not
be sued (even by their own citizens) for money damages in federal court.  *See Hans v.
Louisiana*, 134 U.S. 1, 10–15 (1890).

legislative body or of those officials whose acts may fairly be said to be those of the

municipality," rather than holding the municipality liable simply because it employed a

constitutional wrongdoer. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397,

403–04 (1997).

The relevant policy or custom can take several forms, including:

> (1) a formal regulation or policy statement; (2) an informal
> custom amounting to a widespread practice that, although
> not authorized by written law or express municipal policy, is
> so permanent and well settled as to constitute a custom or
> usage with the force of law; (3) the decisions of employees
> with final policymaking authority; (4) the ratification by such
> final policymakers of the decisions—and the basis for
> them—of subordinates to whom authority was delegated
> subject to these policymakers' review and approval; or
> (5) the failure to adequately train or supervise employees, so
> long as that failure results from deliberate indifference to the
> injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation

marks omitted; alterations incorporated).  But, whatever species of policy or custom is

alleged,

> [t]he plaintiff must also demonstrate that, through its
> *deliberate* conduct, the municipality was the "moving force"
> behind the injury alleged.  That is, a plaintiff must show that
> the municipal action was taken with the requisite degree of
> culpability and must demonstrate a direct causal link
> between the municipal action and the deprivation of federal
> rights.

*Bryan County*, 520 U.S. at 404 (emphasis in original).

Mullins argues that he has plausibly alleged the City's liability based on a failure

to train theory, an informal custom theory, and a formal policy theory.  (ECF No. 27 at

13–15.)

1.   <u>Failure to Train</u>

"[T]he inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Allen v. Muskogee*, 119 F.3d 837, 841 (10th Cir. 1997) (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)).  The "well established" elements of a § 1983 claim for inadequate use-of-force training for police require a showing:

> (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact; and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*Id.*

"However, a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Erickson v. City of Lakewood, Colo.*, 489 F. Supp. 3d 1192, 1207 (D. Colo. 2020) (alterations omitted) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23 (1985) (plurality opinion) (observing that a policy of inadequate training is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*.").

Mullins does not allege facts to support a finding of deliberate indifference on the part of the City.  "To satisfy the stringent deliberate indifference standard, [a] pattern of similar constitutional violations by untrained employees is ordinarily necessary."  *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1285 (10th Cir. 2019).  Here, Mullins has

failed to allege a pattern of other, similar constitutional violations.  Moreover, Mullins has also failed to allege other facts that could plausibly show the City's deliberate indifference to the right of persons to be free from the use of excessive force. Therefore, Mullins has not stated a case for *Monell* liability under this theory.

2.   Informal Custom

"[A]n act performed pursuant to a custom that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."  *Bryan Cnty.*, 520 U.S. at 404 (internal quotation marks omitted); *see also City of St. Louis v. Prapotnik*, 485 U.S. 112, 127 (1988) (establishing an informal policy or custom requires the plaintiff to show that the misconduct was widespread—*i.e.*, that it involved a series of decisions).

Mullins does not make any allegations to show that "the relevant practice is so widespread as to have the force of law."  *Bryan Cnty.*, 520 U.S. at 404.  He does not allege any other instance of this kind of constitutional violation having occurred at any other time.  Therefore, Mullins has not stated a case for *Monell* liability under this theory.

3.   Formal Policy

Under *Monell*, a municipality may be liable under 42 U.S.C. § 1983 for damages where the entity's "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury."  436 U.S. at 694.  To state a *Monell* claim, a plaintiff must allege: (1) the existence of a policy or custom; and (2) that the municipality intended the unconstitutional conduct to occur or was deliberately indifferent to the possibility that

conformance with the custom of policy would result in unconstitutional conduct.  *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996).

Mullins alleges that the City investigated the incident at issue in this case and "insisted that its officers had acted in accordance with the municipality's policies, customs, and training."  (ECF No. 27 at 14.)  He argues that if Defendant Officers' unconstitutional actions were consistent with its policies, then those policies must have caused Defendant Officers' unconstitutional actions.  (*Id.*)

But to state a claim under this theory, Mullins needs to allege more than that an officer acted unconstitutionally without violating the City's policies.  A plaintiff needs to show that the City intended the unconstitutional conduct to happen or was deliberately indifferent to the possibility that unconstitutional conduction would result from the policies.  *Jenkins* 81 F.3d at 994.  Mullins does not allege facts showing that the City intended for CSPD officers to release a canine to apprehend a suspect under these circumstances.  Nor does he allege other incidences of similar unconstitutional uses of canines that would put the City on notice that its policy may be causing constitutional violations.  Therefore, Mullins has not stated a claim for *Monell* liability under this theory as well.

### V. CONCLUSION

For the foregoing reasons, the Court ORDERS:

1.      Defendants' Motion to Dismiss (ECF No. 25) is GRANTED IN PART and DENIED IN PART as follows:

      a.      Defendants' Motion to Dismiss Mullins' personal capacity claims against Defendant Kelly is DENIED;

b.   Defendants' Motion to Dismiss (ECF No. 25) is GRANTED in all other

respects, and all such claims are DISMISSED WITHOUT PREJUDICE;

and

2.   Should Mullins believe himself in a position to plausibly plead facts which would

cure the pleading deficiencies noted in this Order, he may file a motion seeking

leave to file an amended complaint reflecting same by no later than **December**

**31, 2021**.  Any such proposed amended complaint may NOT re-plead official

capacity claims against the Defendant Officers.

Dated this 15th day of December, 2021.

BY THE COURT:

William J. Martinez
United States District Judge